UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOYCE WILLIAMS,

               Plaintiff,

v.                                        2:09CV60

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Secretary of Health and Human Services denying her receipt of disability insurance benefits (DIB) under the Social Security Act. Plaintiff and defendant have both filed motions for summary judgment. The motions were referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference entered April 21, 2009.

### I. STATEMENT OF THE CASE

#### A. Procedural Background

Plaintiff filed an application for DIB payments on December 21, 2005, alleging that she became disabled on March 1, 2005, due to breast cancer, degenerative disc disease, neuropathy, headaches, carpal tunnel syndrome, hypertension, gastroesophageal reflux disease, anemia, pain, depression, anxiety, and cardiovascular disease. (R. at 95-99; 156; 162.) Plaintiff's claims were denied initially and on reconsideration. A request for a hearing was timely filed and was granted. The hearing was conducted on June 25, 2007. Plaintiff was

represented by counsel and testified, in the course of the hearing. A vocational expert was present but did not testify. (R. at 35-49; 56.) On August 23, 2007, an administrative law judge (ALJ) denied plaintiff's claim for DIB. (R. at 18-34.) On September 7, 2007, plaintiff filed a request for review of the ALJ's decision. (R. at 16-17.) On December 4, 2008, the Appeals Council denied plaintiff's request, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1-5.)

On February 6, 2009, plaintiff filed a complaint in federal court, appealing the Commissioner's final decision, and on April 9, 2009, defendant filed an answer. On May 27, 2009, plaintiff filed a motion for summary judgment, alleging that the Commissioner's decision was not supported by substantial evidence. On June 26, 2009, defendant filed a motion for summary judgment. This matter is now ripe for consideration.

## B. Factual Background

Plaintiff was born October 31, 1956, and at the time of the hearing, she was fifty years old. Plaintiff has a high school education and a teacher's aid certificate. Plaintiff worked as a correctional officer for ten years, and prior to that, she worked as a desk clerk and a housekeeper. She left her job as a correctional officer due to her illnesses. (R. at 39-40). Plaintiff's onset date of disability is March 1, 2005.

### 1. Medical history

#### a. Treating physicians

In April, 2000, plaintiff was seen by Dr. Claire Carman, who diagnosed her with right breast cancer. (R. at 214.) Plaintiff had conservative surgery, followed by external beam radiation therapy. She completed her treatments on July 18, 2000. At the time of plaintiff's

2

follow-up visit on August 23, 2000, she had no clinical evidence of cancer and was recovering nicely from the acute side effects of radiation. (R. at 190.) She continued to follow up with Carman for mammograms and monitoring. (R. at 211-14.) Carman referred plaintiff to physical therapy for scar massage, range of motion, and correction of costochondritis.[1] (R. at 212.)

On November 15, 2001, Carman discovered a new mass in plaintiff's right breast. (R. at 210.) After removal of the mass, plaintiff's right breast remained asymptomatic.

On May 27, 2005, plaintiff underwent a bilateral diagnostic mammogram at Sentara Norfolk General Hospital, which reveled a mass in her left breast. (R. at 205-206.) Following a biopsy, plaintiff was diagnosed with left breast carcinoma on June 2, 2005. (R. at 204.) On June 21, 2005, Carman performed a left partial mastectomy with sentinel node biopsy and excision of the area. (R. at 178.)

Following surgery, Carman referred plaintiff to Dr. Michael Steinberg, an oncologist, for chemotherapy. (R. at 203.) Steinberg discussed with plaintiff the potential side effects of chemotherapy, including peripheral neuropathies[2] and muscle and joint aching. (R. at 286.) On July 13, 2005, plaintiff began chemotherapy and completed the treatments on October 26, 2005. (R. at 202; 282-91.) Additionally, plaintiff received CT stimulation, an IMRT forward treatment plan, and

---

[1] Pertaining to a rib and its cartilage. DOLAND'S ILLUSTRATED MEDICAL DICTIONARY 431 (31st ed. 2007).

[2] A functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis; the etiology may be know or unknown. Known etiologies include complications of other diseases (such as diabetes or porphyria), or of toxicity states (such as poisoning with arsenic, isoniazid, lead, or nitrofurantoin). DOLAND'S at 1287.

a six and one-half week course of radiation therapy for local regional control of the cancer. (R. at 187.)

On October 23, 2006, Steinberg completed a medical assessment physical ability form, finding that plaintiff's impairment did not affect her lifting/carrying, standing/walking, or sitting. He indicated that plaintiff should only climb, balance, stoop, crouch, kneel, and crawl occasionally, due to fatigue and tiredness. Steinberg determined that reaching, handling, feeling, pushing, pulling, seeing, hearing, or speaking were not affected by plaintiff's impairment. Finally, he suggested that plaintiff should have some environmental restrictions due to the effects of chemotherapy. (R. at 350-54.)

The record also includes an unsigned medical assessment form dated May 23, 2007, which indicates that plaintiff was only able to sit for thirty minutes, stand for thirty minutes, and able to sit and stand/walk for less than two hours. The form further indicated that plaintiff should never to lift as much as ten pounds. (R. at 597.) Finally, the form noted that plaintiff suffered from "[d]iffuse, constant radiating pain." (R. at 595.) Although Steinberg's name and address appear on the last page of the form, it was not signed. Defendant suggests that the handwriting on the unsigned form appears to be different than the handwriting on the form of October 23, 2006, which was prepared and signed by Steinberg. (Def's Mot. for Summ. J. ¶ 13; R. at 351-52; 598.)

Throughout Steinberg's treatment of plaintiff, he consistently noted that she was progressing well and that her physical examinations were generally unremarkable. Furthermore, his reports indicate that plaintiff did not complain of serious pain. (R. at 282-83, 285, 288, 293-95, 508-10, 549-50, 618, 620.) Finally, a bone density scan was

4

normal except for some signs of osteopenia,[3] a mammogram revealed no recurrent malignancy, and chest x-rays were normal. (R. at 501; 505; 545.)

On April 20, 2006, plaintiff was referred to Dr. Richard Wertheimer due to complaints of numbness in her hands and legs. Wertheimer noted that the numbness was caused by peripheral polyneuropathy,[4] which began when she was receiving chemotherapy but continued to worsen after chemotherapy ended. Wertheimer ordered an EMG and nerve conduction studies. (R. at 300-03.) On June 16, 2006, the EMG revealed evidence of right S1 radiculopathy[5] and right median neuropathy at the wrist. An MRI scan of the lumbosacral spine revealed disc protrusion at L3-L4 without evidence of metastatic [6] disease or impingement of the S1 nerve root. Because plaintiff continued to complain of back and leg pain, a whole body bone scan was ordered. (R. at 299.) On July 3, 2006, Wertheimer noted that the bone scan was negative with no evidence of neoplasm[7] but that degenerative disease was seen in both of plaintiff's ankles. (R. at 298.)

---

[3] Reduced bone mass due to the decrease in the rate of osteogenesis to the extent that there is insufficient compensation for normal bone lysis. The term is also used to refer to any decrease in bone mass below the normal. DOLAND's at 1369.

[4] Neuropathy of several peripheral nerves simultaneously. DOLAND's at 1513.

[5] Disease of the nerve roots. DOLAND's at 1595.

[6] The transfer of disease from one organ or part to another not directly connected with it. It may be due either to the transfer of pathogenic microorganisms (e.g., tubercle bacilli) or to transfer of cells, as in malignant tumors. DOLAND's at 1163.

[7] Any new and abnormal growth; specifically a new growth of tissue in which the growth is uncontrolled and progressive. Malignant neoplasms are distinguished from benign in that the former show a greater degree of anaplasia and have the properties of invasion and metastasis. DOLAND's at 1258.

On August 1, 2006, Wertheimer reported that plaintiff had good strength in her lower extremities bilaterally, with some weakness of right foot dorsiflexion.[8] (R. at 391.) Additionally, straight-leg-raising testing was negative, Romberg's sign testing was negative, and proprioception was intact. (R. at 391.) Plaintiff's Phalen's sign was positive bilaterally as well as her Tinel's sign, but she had no limitation of range of motion in her fingers. (R. at 391.) Additionally, plaintiff reported that physical therapy helped her back pain, but she continued to experience pain which radiated from her lower back into her right leg and groin. Wertheimer referred her to a rheumatologist. (R. at 391.)

On October 20, 2006, Wertheimer completed a medical assessment form indicating that plaintiff could sit eight hours and stand or walk four hours in an eight-hour workday but that she could only lift and/or carry up to five pounds due to carpal tunnel syndrome. (R. at 355-57.) Wertheimer opined that plaintiff's abilities to reach, handle, feel, push, and pull were all affected by pain and numbness. (R. at 356.) His opinion was that plaintiff should never balance, stoop, crouch, kneel, and/or crawl due to back pain. Finally, Wertheimer warned that plaintiff should not work near heights, moving machinery, extreme temperatures, chemicals, humidity, and vibrations due to the possible loss of balance and the increased risk of injury. (R. at 357.) Wertheimer indicated that plaintiff was able to perform work activity five days a week, eight hours a day, fifty-two weeks a year, if the work is sedentary in nature. (R. at 357.)

---

[8] Flexion or bending toward the extensor aspect of a limb, as of the hand or foot. DOLAND'S at 570.

On February 15, 2007, Wertheimer noted that plaintiff had good strength in all four extremities, with some mild weakness of right foot dorsiflexion. (R. at 388-89.) Additionally, her coordination was intact throughout, her gait was only slightly wide-based, and her Romberg's sign testing was negative. (R. at 389.) An elastic back support had relieved some of her back pain, and a wrist splint had helped with the discomfort in her hand. (R. at 388.)

On October 2, 1006, plaintiff was seen by Dr. Alfred Denio for an initial consultation at the Center for Arthritis and Rheumatic Diseases. Denio opined that plaintiff's mechanical back pain was nonstructural and was related to her deconditioning after cancer treatments. (R. at 368.) Denio noted that plaintiff had a supple neck, no peripheral synovitis,[9] and good grip strength and finger curl. Additionally, she had normal range of motion in her elbows, shoulders, and cervical spine, and she had good movement in her lumber spine with only some tenderness in the right sciatic notch and lumbar paravertebrals.[10] (R. at 370.) Denio indicated that there was no pain when plaintiff rotated her hips, knees, ankles, and big toes, and straight-leg-raising test was negative. (R. at 370.) Plaintiff's knee and ankle reflexes were normal, with some knee tenderness noted on percussion. (R. at 370.) Plantar[11] reflexes were flexor, motor function was intact, and her strength was 5/5. (R. at 370-71). Denio noted a slightly broad-based gait, with some hysterical Romberg. (R. at 371.)

---

[9]   Inflammation of a synovium; it is usually painful, particularly on motion, and is characterized by a fluctuating swelling due to effusion within a synovial sac. DOLAND's at 1879.

[10]   Beside the vertebral column. DOLAND's at 1403.

[11]   Pertaining to the sole of the foot. DOLAND's at 1476.

Lumbar spine x-rays revealed degenerative changes of facets at L4-5, with some associated degenerative disk disease, but x-rays of her hands, wrists, and hips were unremarkable. (R. at 372.)

On November 20, 2006, Denio noted that plaintiff had only transient relief with a series of epidural steroid injections. He indicated that plaintiff's main problem continued to be the pain in her back and leg, therefore, he suggested an elastic lumbar support, but plaintiff asked for a surgical opinion. (R. at 366.)

On December 6, 2006, plaintiff was examined by Michael Weaver, a certified physician's assistant in the office of Dr. Grant A. Skidmore, a neurosurgeon. (R. at 419). Weaver noted that plaintiff had a normal gait, could tandem walk without difficulty, had full range of motion in her lumbar spine, had a strength of 5/5 in her lower extremities bilaterally, and had downgoing toes. (R. at 419.)

On February 16, 2007, Skidmore noted that recent diagnostic studies revealed no significant neural compression and only mild stenosis at L3-4. He indicated that plaintiff had degenerative disease in her lumbar spine which could account for her back pain, but the leg pain seemed to be a possible neuropathy. Skidmore explained to plaintiff that surgery on her back was not an option. (R. at 405.)

On May 31, 2006 plaintiff underwent a psychiatric evaluation at Southampton Behavioral Healthcare for depression. Wayne Reed, a licensed professional counselor, assigned plaintiff a GAF score of sixty. (R. at 362-64.) Plaintiff continued to meet with Reed on a monthly basis. (R. at 347.)

On October 19, 2006, Reed completed a mental assessment form, opining that plaintiff was unable to work full time because of emotional limitations which were heavily influenced by chronic physical problems.

(R. at 349.) He indicated that plaintiff had marked limitations in her ability to maintain attention and concentration for an extended period, to travel in unfamiliar places, or use public transportation. (R. at 348-49.) Reed also indicated that plaintiff was moderately limited in her ability to remember locations and work-like procedures and to understand and remember detailed instructions. In addition, Reed noted that plaintiff was moderately limited in her ability to carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted, and make simple work-related decisions. (R. at 347-49.)

Plaintiff's symptoms improved following the initial meeting with Reed. Her level of functioning and energy increased, she became more social, and she reported less depression and an increase in happiness and optimism. (R. at 571-74; 576; 578.) On April 10, 2007, Reed completed another mental assessment form concerning plaintiff's functionality. He indicated that plaintiff was not significantly limited in the broad functional categories of understanding and memory, sustained concentration and persistence, social interaction, and adaption. (R. at 585-86.) It was Reed's belief that plaintiff was only moderately limited in her abilities to maintain attention and concentration for an extended period and to travel in unfamiliar places or use public transportation. (R. at 585-86.)

b. <u>Disability Determination Services (DDS) physicians</u>

On September 26, 2006, after reviewing the evidence, Dr. Robert Castle opined that plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently. He determined that she could stand or walk for up to six hours in an eight-hour workday and sit up to

9

six hours in an eight-hour workday, with no other limitations. (R. at 319-22.)

On September 26, 2006, plaintiff met with Edward Spain, Ph.D., a consultative psychologist, for a DDS consultation. Plaintiff reported symptoms of depression including feelings of hopelessness, insomnia, loss of appetite, low energy, inadequate ability to maintain concentration, and inability to remember important aspects of daily activities. Spain's diagnosis was adjustment disorder and assigned plaintiff a GAF score of sixty, indicating borderline mild to moderate symptoms. (R. at 328, 331.) Spain believed that plaintiff was mentally capable of performing moderately complex and detailed tasks, comprehending and accepting simple concise oral instructions without difficulty, and behaving in a socially appropriate manner with supervisors and co-workers. He worried that plaintiff would have difficulty dealing with frequent changes in the workplace routine, maintaining regular attendance, and dealing with the general public. Spain opined that plaintiff's mental health condition would significantly interfere with her ability to complete a normal work day or week and that she would be prone to frequent episodes of emotional deterioration. (R. at 328-32.)

On September 26, 2006, Robert Gerstle, Ph.D., a state-agency psychologist, reviewed the evidence and determined that plaintiff was able to meet the basic demands of competitive work on a sustained basis, despite the limitations resulting from her depression. (R. at 316.) He found that she suffered only a mild limitation in her daily living, social functioning, and ability to concentrate. Although Gerstle found that plaintiff suffered from depression as the result of her medical problems, he noted that she was doing better with the help of medication. (R. at 316.)

## 2.  Plaintiff's assertions and testimony in the record.

### a.  Employment history

Plaintiff testified that she finished high school and currently holds a teacher's aid certificate.  (R. at 38-39.)  For ten years she worked as a corrections officer, and prior to that she was employed as a desk clerk and housekeeper.  (R. at 39-40.)

### b.  Impairments

Plaintiff testified that she has trouble holding things due to numbness, and although, she underwent surgery for carpal tunnel syndrome, her hands continue to go numb.  Because items have a tendency to slip out of her hands, she sometimes uses plastic dishes and silverware.  (R. at 42.)  She also said she experiences similar numbness in her legs, which requires her to prop them up in a recliner for approximately three hours a day.  (R. at 47.)

Plaintiff stated that she takes medication to relieve pain, which radiates from the top of her body to the bottom. (R. at 43.) Plaintiff testified that since the medication makes her so drowsy, she has to lie down for four to five hours after taking it.  (R. at 45.)

Plaintiff testified that she experiences both good and bad days and estimated that she has three to four bad days a week, during which she remains in bed all day.  (R. at 45-46.)  Finally, she testified that she suffers from depression.  (R. at 46.)

### c.  Daily activities and residual functional capacity (RFC)

Plaintiff testified that she lives independently and does light housework and cooking, although she often has help from friends and relatives.  (R. at 40-41.)  Plaintiff walks for exercise; shops for groceries, with someone's help; and in her spare time she reads.

11

Although she would like to, due to her impairments, she is unable to fish.  (R. at 41.)

### 3.  **The ALJ's decision**

At the conclusion of the hearing, the ALJ denied plaintiff's application.  (R. at 30.)  At step one of the five-step evaluation, the ALJ noted that plaintiff had not engaged in substantial gainful activity since March 1, 2005, the alleged onset date of disability.  (R. at 23.)  The ALJ thus proceeded to the second step of the evaluation.

At step two, the ALJ determined that medical evidence established that plaintiff had history of breast cancer, neuropathy, lumbar degenerative disc disease, depression, and anxiety.  (R. at 23.)  However, the ALJ concluded that all other alleged impairments were nonsevere because they did not exist for a continuous period of twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations.  In particular, the ALJ noted that plaintiff's carpal tunnel syndrome, status post bilateral surgical releases, cardiovascular disease, and her migraine headaches were not attended by clinical or objective evidence of limitation.  (R. at 23-24.)

At step three of the evaluation, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that plaintiff's degenerative disc disease did not reach the level of severity described in the listing due to the absence of evidence of a spinal disorder resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression accompanied by motor loss, sensory or reflex loss, and

12

positive straight leg raising; spinal arachnoiditis[12] manifested by severe burning or painful dysesthesia, [13] resulting in the need for changes in position or posture more than once every two hours; or lumbar spinal stenosis resulting in pseudoclaudication[14] and in the inability to ambulate effectively, as defined in 1.00(B)(2)(b) and 1.04(A), (B). (R. at 24.)

Although plaintiff suffers from peripheral neuropathy with loss of sensation in her hands and feet, the ALJ found that there was no evidence of significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station, as described in listing 13.10. The ALJ further found that plaintiff has a history of left and right breast cancer, but there was no evidence of recurrence or metastasises, as described in listing 13.10. (Id.)

Finally, although the medical evidence established that plaintiff had exhibited some signs and symptoms listed in Criteria "A" of listing 12.04 and 12.06, the ALJ found that her depression and anxiety resulted in less than marked functional limitations under Criteria "B" of the medical listing, and there was no evidence to establish the presence of Criteria "C." The ALJ found that plaintiff's mental impairments result in mild restriction of her activities of daily living; mild difficulties in maintaining social functioning; moderate

---

[12]  Inflammation of the arachnoidea mater; called also arachnitis. DORLAND's at 124.

[13]  Distortion of any sense, especially of that of touch. cDAND's at 584.

[14]  Limping or lameness. DOLAND's at 375.

13

difficulties in maintaining concentration, persistence, or pace; and no episodes of decomposition. (Id.)

Having determined that plaintiff did not have an impairment that satisfied or equaled in medical severity any of the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ moved on to determine whether she had the residual functional capacity (RFC) to perform her past relevant work or other work existing in significant numbers in the economy. (R. at 25.) After considering the evidence, the ALJ found that plaintiff's medically determined impairments could reasonably be expected to produce the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible in light of the effects of treatment, the absence of recurrent malignancy, and statements from treating and examining sources regarding the nature and severity of plaintiff's impairments. (R. at 26.)

The ALJ rejected the opinions of Drs. Reed, Steinberg, and Wertheimer, because their assessments were merely checklist forms prepared for purposes of litigating the claim for disability. The forms were not completed in the normal course of treating plaintiff, and the limitations cited were not supported by the clinical and objective findings reported elsewhere in the record. (R. at 28-29.)

Considering the evidence, the ALJ determined that plaintiff had the RFC to perform the strength demands of light work. From a mental standpoint, she was limited to simple instructions and simple tasks, considering her depression, anxiety, and chronic pain. (R. at 29.) Plaintiff's past relevant work as a corrections officer is classified as medium semi-skilled work, and since plaintiff is limited to simple light work, she is unable to perform past relevant work. (Id.)

14

At step five the ALJ determined that based on plaintiff's age, education, work experience, and RFC, she would be able to make a successful adjustment to work that exists in significant numbers in the national economy. Therefore, he determined that a finding of not disabled was appropriate. (<u>Id.</u>)

## C. Issue

The issue in this matter is whether substantial evidence exists to support the Commissioner's final decision that plaintiff is not disabled within the meaning of the Social Security Act and, therefore, not entitled to DIB.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Motion for Summary Judgment Standard

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, the pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A genuine issue of fact exists if "a reasonable jury could return a verdict for the nonmoving party."

<u>Id.</u>  In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict.  <u>See id.</u>

Finally, as the Fourth Circuit explained,

> [w]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion.  Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

<u>Tuck v. Henkel Corp.</u>, 973 F.2d 371, 374 (4th Cir. 1992)(citations omitted).

## B.  Standard of Review

When an individual makes a claim for DIB/SSI, he or she has the right to a hearing in order to determine whether he or she is disabled.  <u>See</u> 42 U.S.C. § 1383(c)(1)(A)(2000).  After a final decision has been rendered by the SSA, a party can seek review of the decision by filing a civil action in federal court.  <u>See id.</u> at § 1383(c)(3).  The factual findings which have been rendered by the Commissioner of Social Security "if supported by substantial evidence, shall be conclusive," and where a claim has been denied, the "court shall review only the question of conformity with such regulations and the validity of such regulations."  <u>Id.</u> at § 405(g).  The Commissioner's findings with respect to whether an individual is disabled should not be disturbed, even if the court may disagree with them, as long as the findings are supported by substantial evidence, and the correct law has been applied.  <u>See Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990); <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986).  Substantial evidence is defined as "more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). In determining what is substantial evidence, the Fourth Circuit has held that substantial evidence exists "[i]f there is evidence to justify a refusal to direct a verdict were the case before a jury. . ." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984)(quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Specific regulations have been promulgated at the direction of Congress by the Secretary of Health and Human Services for the purpose of making an eligibility determination. See 20 C.F.R. § 416 (2000). The social security regulations (SSR) require the ALJ to conduct a five step sequential evaluation of a disability to determine whether a claimant is entitled to benefits. The five steps which the ALJ must follow are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in the C.F.R. at Appendix 1?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

See id. at § 404.1520/416.920. In reviewing a social security case, the ALJ bears the ultimate responsibility for weighing the evidence. See Hays, 907 F.2d at 1456.

## C.  Discussion

A person is eligible for DIB if he or she is insured for such benefits, has not attained retirement age, has filed an application for such benefits, and is under a disability.  See 42 U.S.C. § 423(a)(2000). The code and SSR carefully detail the requirements which a person must meet to be fully insured and eligible for such insurance benefit payments.  See id. at § 423(c).

The SSI program is designed "to assure a minimum level of income for people who are age sixty-five or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110.  Congress has stated that benefits will be paid to an individual if that person is aged, blind or disabled and has limited income or resources which total less than the dollar figure set out in 42 U.S.C. § 1382(a).

While the requirements for these two types of social security benefits differ, the definitions and terms used to determine if a person is disabled and, therefore, eligible for such benefits are the same.  A person is considered disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  Id. at § 423(d)(1)(A).  To be disabled, an individual's impairments must be:

> of such severity that he is not only unable to do
> his previous work but cannot, considering his age,
> education,  and  work  experience,  engage  in  any
> other  kind  of  substantial  gainful  work  which

exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. at § 423(d)(2)(A).

1. Plaintiff has not been engaged in substantial gainful activity.

The first step in evaluating whether a disability exists requires a determination of whether plaintiff has engaged in substantial gainful activity since the onset of the alleged disability. See 20 C.F.R. §§ 404.1520; 415.920 (2000). If a claimant is working, and the work which he or she is doing is considered to be substantial gainful activity, then the claimant will be found not disabled. See id. at §§ 404.1520(b); 416.920(b). Substantial gainful activity is defined as "work activity that involves doing significant physical or mental activities . . . even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Id. at §§ 404.1572(a); 416.972(a); see also id. at §§ 404.1510; 416.910. In order to be gainful activity, the work activity must be done for pay or for some type of profit, even if that profit is not realized. See id. at §§ 404.1510(b); 404.1572(b); 416.910(b); 416.972)b). Substantial gainful activity does not include daily or recreational activities, including "taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs. . . ." Id. at §§ 404.1572(c); 416.972(c).

The ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability on March 1, 2005. The record supports this finding, therefore, the ALJ's decision

19

at step one is supported by substantial evidence, and the Court will proceed to step two.

## 2. Plaintiff suffers from a severe impairment.

The second step of the disability evaluation requires the Court to determine whether plaintiff suffers from a severe impairment. See 20 C.F.R. §§ 404.1520(c); 416.920(c)(2000). If a claimant does not suffer from a severe impairment, then he or she cannot be considered disabled, and thus, he or she is ineligible for DIB. See id. To find that a severe impairment exists, a claimant must have "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities. . . ." Id. The impairment must be the product of "anatomical, physiological, or psychological abnormalities," and it must be established by "medical evidence consisting of signs, symptoms, and laboratory findings. . . ." Id. at §§ 404.1508; 416.908.

Examples of basic work activities which must be significantly limited by the impairment include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers, and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20

Id. at §§ 404.1521(b); 416.921(b). The combined effect of all of the impairments which an individual suffers shall be considered together, without regard for whether any one of those symptoms would individually be enough to qualify as a severe impairment. See id. at §§ 404.1523; 416.923. The Supreme Court has held that this step of the disability evaluation is a de minimis threshold. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987). The purpose of requiring such a threshold showing of medical severity is to increase "the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Id. at 153. Accordingly, the severity determination must have "a strictly medical basis . . . without regard to vocational factors." Id. at 151 (quoting the Senate Report accompanying the 1984 amendments.)

The ALJ found that plaintiff has the following severe impairments: history of breast cancer, neuropathy, lumbar degenerative disc disease, depression and anxiety. Statements of treating physicians, as well as plaintiff's own testimony, indicate that plaintiff has continually suffered from these impairments. The ALJ found that all other alleged impairments are nonsevere, since they have not existed for a continuous period of twelve months, are responsive to medication, do not require any significant medical treatment, or do not result in any continuous exertional or nonexertional functional limitations. Specifically, the ALJ noted that plaintiff's carpal tunnel syndrome, status post bilateral surgical releases, cardiovascular disease, and migraine headaches were not attended by clinical or objective evidence.

Substantial evidence exists to support the ALJ's finding that plaintiff's history of breast cancer, neuropathy, lumbar degenerative disc disease, depression and anxiety are severe impairments. The record also supports the ALJ's conclusion that the other alleged impairments are not severe. Having found plaintiff's history of breast cancer, neuropathy, lumbar degenerative disc disease, depression and anxiety to be severe, the ALJ properly proceeded to step three of the evaluation.

3. <u>Plaintiff does not suffer from an impairment or combination of impairments that meets or equals one found in the listings</u>.

The third step of the evaluation requires a determination of whether plaintiff suffers from an impairment or impairments which meet(s) or equal(s) one found in the listings set forth in Appendix 1. <u>See id.</u> at §§ 404.1520(d); 416.920(b)(2000). The listings provide a description "for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." <u>Id.</u> at §§ 404.1525(a); 416.925(a). The impairment must have a duration of at least twelve months, unless such impairment is expected to cause claimant's death. <u>See id.; see also id.</u> at §§ 404.1509; 416.909. Without more, a diagnosis that a claimant has an impairment listed in the Appendix does not automatically result in a finding of a disability. <u>See id.</u> at §§ 404.1525(d); 416.925(d). Claimant has the burden to show through medical evidence, such as symptoms, signs, doctors opinions, and laboratory findings, that his or her condition meets the precise criteria set out in the listings for that particular impairment. <u>See id.</u>

If a claimant's impairment or impairments can be found in the listings, or are equal to impairments that are set forth in the listings, a claimant will be considered disabled without considering his or her

22

age, education, or work experience. <u>See id.</u> at §§ 404.1520(d); 416.920(d). A claimant's impairments are medically equivalent to a listed impairment found in Appendix 1 "if the medical findings are at least equal in severity and duration to the listed findings." <u>Id.</u> at §§ 404.1526(a); 416.926(a). In order to make a determination as to medical equivalency, the SSR state:

> We will compare the symptoms, signs, and laboratory findings about your impairment(s), as shown in the medical evidence we have about your claim, with the medical criteria shown with the listed impairment. If your impairment is not listed, we will consider the listed impairment most like your impairment to decide whether your impairment is medically equal. If you have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs, and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment.

<u>Id.</u> Therefore, just because an impairment is not listed within the Appendix, it does not necessarily follow that the claimant's impairment will not be considered a disability. If the listing is met, then a claimant is considered disabled and is entitled to DIB and/or SSI. If a listing within Appendix 1 is not met, then a claimant has the burden to show that he or she is unable to perform past relevant work.

The ALJ found no evidence that plaintiff's impairment or combination of impairments meet or medically equal one of the listed impairments in 20 CPR Part 404, Subpart P, Appendix 1. The ALJ found that plaintiff's condition did not meet the listing in 20 CPR Part 404, Subpart P, Appendix 1, which requires one of the following to qualify as severe: (1) evidence of a spinal disorder resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression

23

accompanied by motor loss, sensory or reflex loss, and positive straight leg raising; (2) spinal arachnoiditis manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or (3) lumbar spinal stenosis resulting in pseudoclaudication and in the inability to ambulate effectively, as defined in 1.00B2b and 1.04A, B, and C. Although plaintiff had peripheral neuropathy with loss of sensation in her hands and feet, the ALJ found that there was no evidence of significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements or gait and station, as defined in listing 13.10. The ALJ also found that although plaintiff has a history of left and right breast cancer, there was no evidence of recurrence or metastasises, as described in listing 13.10.

Finally, the ALJ found that plaintiff exhibited some signs and symptoms of depression, as described in paragraph "A" of listing 12.04 and 12.06. Despite this, the ALJ found that her depression and anxiety resulted in less than marked functional limitations under Criteria "B" of the medical listing. Furthermore, the evidence did not establish the presence of the "C" criteria. Therefore, the ALJ found that plaintiff's mental impairments result in mild restriction of her activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.

In determining the appropriate weight to give to any medical source opinion, the regulations require that the ALJ consider: (1) the examining relationship between the medical source and claimant; (2) the treatment relationship, including the length of the relationship,

24

frequency of examination, and nature and extent of the treatment relationship; (3) support by medical evidence; (4) consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) any other factors which support or contradict the opinion. 20 C.F.R. §404.1527(d). In this case, the ALJ considered Dr. Spain's medical opinion but did not assign it great weight. The ALJ also considered the opinions of Drs. Reed, Steinberg, and Wertheimer but gave them no evidentiary weight.

As to Spain's opinion, the ALJ adequately explained the basis for not assigning great weight to his opinion that plaintiff would be unable to maintain regular work attendance. The ALJ explained that Spain's summary opinion of disability was not consistent with his countervailing conclusion that plaintiff had only borderline mild to moderate symptomatology. (R. at 28, 331). Furthermore, the ALJ explained that Spain's conclusory opinion was not consistent with plaintiff's mental status examination and test results, which were essentially within the normal limits and indicated no significant limitations. (R. at 28, 330-331.)

As to the opinions of Steinberg, Reed, and Wertheimer, the ALJ explained that their disability assessments were not completed in the normal course of treatment but were checklist forms prepared at plaintiff's request for purposes of litigating the claim of disability. (R. at 28.) The ALJ noted that their disability opinions were not supported by the clinical and objective findings in their treatment notes or elsewhere in the record. (R. at 29.) For example, the unsigned form attributed to Steinberg dated May 23, 2007, indicts that plaintiff could only sit or stand for less than two hours. The conclusion is unsupported by Steinberg's office notes, plaintiff's physical examinations were

25

generally unremarkable with no complaints of serious pain, and diagnostic studies showed no clinically significant signs. (R. at 282-83, 285, 288, 293, 501, 505, 508, 510, 545, 549, 618, 620.) Also, Reed's assessment that plaintiff was unable to work was not consistent with his assessment that plaintiff experienced only mild to moderate mental health symptoms. (R. at 349, 585-86). Finally, Wertheimer's opinion that plaintiff could lift no more than five pounds and that her ability to use her hands to manipulate, push, and pull was affected by pain and numbness was not supported by his office notes. While his notes contained no evidence of strength testing, they included a notation that plaintiff had no limitations in her ability to move her fingers. (R. at 355-56). The ALJ fully considered and weighed the medical opinions of plaintiff's treating physicians in accordance with 20 C.F.R. §404.1527 and adequately explained his reasons for affording no evidentiary weight to the opinions of Steinberg, Reed, and Wertheimer.

While ALJ's will generally give enhanced weight to the findings and opinions of treating physicians, they are not required to accept treating physicians' opinions uncritically. 20 C.F.R. § 404.1527(d)(2). In order to be entitled to controlling or great weight, a physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2)-(3). Accordingly, the ALJ was reasonable in affording limited or no evidentiary weight to the medical opinions of Spain, Steinberg, Reed, and Wertheimer. The ALJ's opinion is supported by substantial evidence, therefore, the Court will proceed to step four of the evaluation.

    4. <u>Plaintiff is unable to perform past relevant work</u>.

26

If the impairment experienced by plaintiff does not meet or exceed those set forth in Appendix 1, it is necessary to proceed to steps four and five. Step four of the analysis requires the Court to compare what plaintiff can still do, despite his or her impairments. See 20 C.F.R. §§ 404.1520(e); 416.920(e)(2000). The burden still remains with plaintiff to prove that he or she is unable to perform past relevant work. See Thorne v. Wienberger, 530 F.2d 580, 582 (4th Cir. 1976). If plaintiff is found to be capable of performing past relevant work, then he or she will not be considered to be disabled, and the claim will be denied. However, if plaintiff is unable to return to past relevant work, the analysis proceeds to step five, and the burden shifts to the Commissioner. See 20 C.F.R. §§ 404.1566, 416.966 (2000).

In determining whether a claimant is able to perform past relevant work, the Court is directed to look at a medical assessment of the individual's RFC. See id. at §§ 404.1545, 416.945. The RFC provides the Court with a report of what the individual can still do despite his or her impairments or combination of impairments as well as a vocational assessment of past job requirements. If a claimant's RFC exceeds requirements of his or her past relevant work, then he or she is determined to be able to return to his or her past relevant work, and the claim can be denied. See id. at §§ 404.1560(b); 404.1561; 416.960(b); 416.961. However, if a claimant's RFC has been reduced below the requirements of his or her past relevant work, then the test at step four is met, and the evaluation proceeds to step five. See id. at §§ 404.1560(c), 416.960(c).

27

Plaintiff previously worked as a corrections officer, which is classified as medium semi-skilled work. Since plaintiff is now limited to simple light work, she is unable to perform past relevant work. The ALJ's opinion is supported by substantial evidence, and the Court will proceed to step five of the evaluation.

### 5. Other jobs exist within the local and national economy which plaintiff could perform.

The fifth step in the analysis considers whether plaintiff can perform any other work available in significant numbers in the national economy, considering plaintiff's age, education, and past work experience. See 20 C.F.R. §§ 404.1566, 416.966 (2000). Step five is reached when the claimant is not engaged in substantial gainful activity and has a severe impairment that does not meet or equal the listings but prevents the claimant from performing past relevant work. In assessing plaintiff's ability to perform other work within the economy, the Court will look at exertional limitations, those limitations or restrictions which impact only strength activities, and nonexertional limitations, those limitations and restrictions which impact nonstrength activities such as concentration and ability to follow instructions. See id. at §§ 404.1569(a); 416.969(a). At step five, the burden of proof shifts to the Commissioner to establish that plaintiff has the ability to perform other work. See Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

If a claimant's impairment solely limits his or her physical function, then the Court is directed to conduct an analysis under the medical/vocational regulations. If a claimant's impairment is solely nonexertional or mental, then full consideration must be given to all of the relevant facts of the case and in accordance with the definitions and

28

discussions of each factor in the appropriate section of the SSR. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a). However, if a claimant suffers from an impairment or impairments causing both exertional and nonexertional limitations, the Court is directed to first determine whether a finding of disability is possible based on the exertional limitations alone. If a claimant would not be disabled based on exertional limitations alone, then the Court should determine whether the nonexertional limitations suffered by the claimant would render him or her disabled. <u>See id.</u> at § 200.00(e)(2).

The ALJ first determined that plaintiff was not disabled based on exertional limitations alone. Next, the ALJ determined that plaintiff's symptoms of depression, anxiety, and chronic pain limited her to simple instructions and simple tasks. (R. at 29.) Social Security Regulation No. 96-9p explains that none of these nonexertional limitations have a significant effect on plaintiff's occupational base. SSR96-9p, 1996 WL 374185 (1996). Accordingly, the ALJ was able to determine that plaintiff's exertional and nonexertional limitations combined did not preclude plaintiff from performing light work, without consulting the vocational expert. SSR 83-14, 1983 WL 31254 (1983); SSR 85-15, 1985 WL 56857 (1985).

If the ALJ had not found that plaintiff had nonexertional limitations but instead found that plaintiff had been able to perform the full range of light work since her protective filing date, grid rules 202.14 and 202.21 would have directed that plaintiff be found not disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, rules 202.14, .21. (R. at 30.) Although the ALJ found that plaintiff could not perform the full range of light work using the grids as a framework and the Commissioner's

rulings for adjudicative guidance, nevertheless, the ALJ found that plaintiff's occupational base had not been significantly eroded. He found that plaintiff would be able to make an adjustment to other work. To the extent that plaintiff's alleged limitations were consistent with the record, the ALJ properly accounted for plaintiff's exertional and nonexertional limitations. The Court finds that the ALJ's opinion is supported by substantial evidence, and correctly determined that plaintiff is not disabled.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that plaintiff's motion for summary judgment be DENIED and defendant's motion for summary judgment be GRANTED.

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. See 28 U.S.C. § 636(b)(1)(C)(2000); Fed.R.Civ.P. 72(b).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based

on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
**James E. Bradberry**
**United States Magistrate Judge**

Norfolk, Virginia

November 23, 2009

## Clerk's Mailing Certificate

A copy of the foregoing Report was mailed this date to each of the following: *Via ECF*

John H. Klein, Esq.
Montagna, Klein, Camden, LLP
425 Monticello Ave.
Norfolk, VA  23510

Susan L. Watt, Esq.
Assistant United States Attorney
World Trade Center, Suite 8000
101 West Main Street
Norfolk, VA 23510-1624

Fernando Galindo, Clerk

By _____
            Deputy Clerk

_____11 - 23_____, 2009